AUSA: LONGSWORTH  Telephone: 810.766.5177
Special Agent: SUTARA  Telephone: 810.341.5710

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America,

    Plaintiff,

v.

Steffon Antoneo-Ray Bullock

Case: 4:20-mj-30097
Judge: Hluchaniuk, Michael J.
Filed: 02-24-2020
SEALED MATTER (dw)

    Defendant(s).

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about the date(s) of December 31, 2019, in the county of Genesee in the Eastern District of Michigan, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:
On or about December 31, 2019, in Genesee County, in the Eastern District of Michigan, defendant knowing he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed firearms that were shipped and transported in interstate commerce and foreign commerce, in violation of 18 U.S.C., Section 922(g)(1).

☑ Continued on the attached sheet.

_____
Complainant's signature

Nathan Sutara, Special Agent - ATF&E
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 24, 2020

_____
Judge's signature

City and state: Flint, Michigan

United States Magistrate Judge Michael J. Hluchaniuk
*Printed name and title*

## AFFIDAVIT

I, Nathan Sutara, being duly sworn, depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.  I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) since May 2018. I am currently assigned to the Detroit, Michigan Field Division, Flint Field Office. I am tasked with investigating violations of firearms and narcotics laws. I have also been involved in many investigations related to violations of federal firearms and narcotics laws. Before working with ATF, I was employed by the Michigan Department of State Police (MSP) for approximately 5 years. I held several positions with MSP, including Detective/Trooper with the Major Case Unit in Saginaw, MI. During this employment, I investigated numerous incidents involving violations of state and federal firearms, robberies, shootings, and homicides.

2.  I make this affidavit with personal knowledge based on my participation in this investigation, including witness interviews by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is

provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

3. My investigation established probable cause that Steffon Antoneo-Ray Bullock (DOB: XX-XX-1991), committed a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

## PROBABLE CAUSE

4. On December 31, 2019, a Michigan State Police Trooper, Dan Nease, observed a vehicle drive through a yellow/red light (east bound) at the intersection of West Court Street and Miller Road in Flint, within the Eastern District of Michigan. As a result of the traffic infraction, the Trooper Nease stopped the vehicle. The vehicle was a gold, 2006 Chevrolet Malibu. Trooper Nease spoke with the driver, Steffon Bullock, and the front passenger (Individual-1). Bullock's identity was confirmed using an MSP-issued mobile fingerprint scanner. Bullock informed Trooper Nease he did not have his driver's license with him. As a result, Trooper Nease asked Bullock to exit the vehicle, and handcuffed him pending further investigation. Trooper Nease also searched Bullock's person and found an empty firearm holster affixed to Bullock's belt and three suboxone strips in his pants pocket.

5. After handcuffing Bullock, Trooper Nease spoke with Individual-1, who was also asked to exit the vehicle. Individual-1 was holding a multi-colored bag, but left it in the vehicle when he/she exited.

6. After Individual-1 got out, Trooper Nease asked Bullock about the empty holster attached to his belt. Bullock claimed that the holster was not his, and added that he saw the holster on the driver seat of the vehicle. After seeing it, Bullock put it on his belt. When asked about the Sub Oxone strips, Bullock admitted he does not have a prescription for them.

7. After both occupants stepped out of the vehicle, Trooper Nease conducted a probable cause search of it. Inside the multi-colored bag, Trooper Nease found the following:

- a black, model G2C, 9mm Taurus pistol, containing six rounds of ammunition;
- a black, .380 caliber Denali pistol, containing three rounds of ammunition;
- a digital scale; and drug paraphernalia.

Under the front passenger seat of the car, Trooper Nease found about 40 grams of suspected crystal methamphetamine within three plastic bags.

8. After finding the above items, Trooper Nease arrested both Bullock and Individual-1. They were then transported to the state police post for processing and interviews.

9. Individual-1 was advised his/her *Miranda* rights and agreed to answer questions. During the interview, Individual-1 admitted to possessing the Denali .380 pistol, adding that it was his/hers, and was in his/her bag. When asked about the Taurus firearm, Individual-1 denied knowing that it was in his/her bag. When asked about the vehicle, Indivdual-1 stated he/she borrowed it from the registered owner. Individual-1 denied any knowledge of the suspected crystal methamphetamine as well as the drug paraphernalia. In a later interview with Individual-1, on January 7, 2020, Individual-1 admitted that Bullock pulled the Taurus 9mm firearm from his holster and gave it to Individual-1 as Trooper Nease activated the emergency lights to conduct the traffic stop.

10. Bullock was also advised of his *Miranda* rights, and waived them. Bullock acknowledged possession of the Sub Oxone strips, and added he does not have a prescription for them. Bullock denied any knowledge of the firearms and/or the suspected narcotics. When asked about the holster, Bullock stated it was already in the vehicle when he got in, and he decided to affix it to his belt.

4

11.    Bullock has a federal conviction for felon in possession of a firearm. In case 16-cr-20325, Judge Terrence Berg sentenced Bullock to 27 months in prison on October 13, 2016. This is a felony offense punishable by more than one year in prison. Because of his sentence and prison term, I believe Bullock knew in 2019 that felon in possession of a firearm is punishable by more than one year in prison.

12.    I have consulted with ATF interstate nexus expert Jon Wickwire. Special Agent Wickwire informed me that the Taurus, model G2C, 9mm handgun bearing S/N: TMA19936 was manufactured outside the State of Michigan. Therefore, the firearm traveled through interstate and/or foreign commerce before Bullock possessed it.

## CONCLUSION

12. Based upon all of this information, probable cause exists that Steffon Bullock violated 18 U.S.C. § 922(g)(1).

Respectfully submitted,

*/s/ Nathan Sutara*
Nathan Sutara
ATF Special Agent

Subscribed and sworn to before me on February 24, 2020

*/s/ Michael J. Hluchaniuk*
HON. MICHAEL J. HLUCHANIUK
UNITED STATES MAGISTRATE JUDGE